UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MUNTIAN, and
APRIL ARMSTRONG,

    Plaintiffs,

v.

JASON THERRIEN, in his individual
capacity, MATT DAVIS, in his individual
capacity, and the CITY OF THREE RIVERS,
jointly and severally,

    Defendants.
_____/

File No. 1:11-cv-515

HON. ROBERT HOLMES BELL

**O P I N I O N**

    This matter is before the Court on Defendants' motion for summary judgment. (Dkt. No. 20.)  Plaintiffs' complaint alleges 42 U.S.C. § 1983 claims against Defendant Officers Jason Therrien and Matt Davis for illegal search and seizure, unlawful arrest and imprisonment, malicious prosecution, and excessive force during arrest.  Plaintiffs also allege a § 1983 *Monell* claim against Defendant City of Three Rivers for failure to train its officers.  For the reasons that follow, Defendants' motion for summary judgment will be denied as to Plaintiffs' § 1983 claim for use of excessive force, and granted with respect to all other claims.

I.

    On January 2, 2010, the Three Rivers Police Department received a call from a Ms. Megan Cornish to report that her tenants living at 109½ S. Andrews Street - a Mr.

Sean Muntian and his girlfriend April - were smoking marijuana. During a follow up call conducted by Defendant Officer Therrien, Ms. Cornish stated that she smelled burnt marijuana emanating from the home when she went to collect rent, and that her husband Robert Cornish had also smelled marijuana coming from the home on a prior occasion.

After receiving the drug tip, Officer Therrien ran a criminal history check on Mr. Muntian. The search revealed prior drug history: Mr. Muntian pled guilty to possession of marijuana in Centreville, Michigan on December 16, 1998; he pled guilty to use of marijuana in Cassopolis, Michigan on August 15, 2003; and pled guilty to operating while impaired by drugs in Centreville, Michigan on July 10, 2007. The search also indicated that Mr. Muntian was in some way connected to arrests by the Indiana State Police for dealing and possession of marijuana in December of 1998.

Officer Therrien drafted an affidavit for search warrant which included the information conveyed by Ms. Cornish and Mr. Muntian's criminal background. In addition to the Michigan convictions, the affidavit indicated that Mr. Muntian was "charged" with dealing in marijuana and possession of marijuana in Indiana. Mr. Muntian denies that he was ever charged in Indiana, though he acknowledges that he was taken to a police station and later released on the date in question. Mr. Muntian does not deny the accuracy of the Michigan convictions. On the strength of Officer Therrien's affidavit, Magistrate Brooks issued a search warrant for the 109½ S. Andrews Street address.

Upon obtaining the search warrant, Officers Therrien and Davis, along with several other officers, proceeded to execute the search.  When the officers arrived, Plaintiffs and their 6-year-old daughter were watching television.  Mr. Muntian testified at deposition that he saw the police officers through his window, and that when the police knocked, he unlocked his deadbolt.  The door swung open, and Mr. Muntian testified that he immediately and without prompting laid flat down with his legs and arms spread, and began yelling, "I got my daughter in here, I got my daughter in here." (Dkt. No. 29, Ex. 1. at 16; Muntian Dep.)  At this point, Mr. Muntian alleges that Officer Therrien stood on his neck and back, jumping off of his body as he entered the home. Mr. Muntian testified that Officer Therrien had his firearm drawn as he entered and approached April Armstrong, who moved to shelter her daughter.  (*Id.* at 43.)  Officer Therrien ordered Ms. Armstrong to get down.  When she did not move, Officer Therrien eventually pulled Ms. Armstrong away from her daughter and handcuffed her.  (*Id.* at 48-49.)  Within a few seconds, both Mr. Muntian and Ms. Armstrong were handcuffed and seated on a bed next to the daughter, while officers attempted to calm Ms. Armstrong down. (*Id.* at 45.)  No officers had guns drawn at this point.  (*Id.* at 47.)

Officer Therrien observed a strong smell of burnt marijuana upon entry.  The police officers searched the house, finding a bag of leafy substance which field tested positive for marijuana.  The police allegedly weighed the bag on a scale found in Plaintiffs' possession, which read 6.6 ounces.  Later testing showed that the scale was

3

inaccurate, and that the bag contained only 3.5 ounces. In addition to the bag of marijuana and the scale, the officers also found marijuana roaches and paraphernalia, including a cleansing kit used for flushing marijuana from the body.

During the search, Mr. Muntian told Officer Therrien that he was a medical marijuana caregiver under the Michigan Medical Marihuana Act, Mich. Comp. Laws 333.26421, *et seq.* ("MMMA"). Mr. Muntian stated that he was not himself a patient, but that one of his patients had smoked marijuana in his home that day. Officer Therrien asked to see a caregiver registry identification card. Mr. Muntian could not produce one, but told Officer Therrien that his application paperwork was equivalent to a caregiver card. Mr. Muntian testified that he had copies of his application paperwork both at his apartment and place of business, but that Officer Therrien refused to look at the papers at his apartment.[1] Mr. Muntian also told Officer Therrien that he had twenty or twenty-one marijuana plants at his store. Officer Therrien attempted to confirm Mr. Muntian's status as a medical marijuana caregiver by searching the LEIN system, but was unable to find a record for Mr. Muntian.

After the search at 109½ S. Andrews St., Officer Therrien sought and obtained a search warrant to search Mr. Muntian's business, Triple Ripple Hydroponics. At Triple Ripple Hydroponics, officer's discovered two caregiver applications, and an indoor grow room containing 22 marijuana plants. The plants and digital sales were seized.

---

[1] Officer Therrien maintains that Mr. Muntian did not have any paperwork at his apartment.

Mr. Muntian and Ms. Armstrong were arrested at their home and taken to the Three Rivers Jail. Mr. Muntian was charged with two counts of possession with intent to distribute marijuana, and two counts of maintaining a drug house. Ms. Armstrong was charged with one count of maintaining a drug house and one count of possession of marijuana. All charges were subsequently dropped.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a defendant carries his burden of showing there is an absence of evidence to support a claim, a plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla

5

of evidence in support of a plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

Defendants assert that they are entitled to summary judgment on Plaintiffs' claims on the basis of qualified immunity. The Supreme Court has held that "governmental officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

**A.  Unlawful Search and Seizure**

Plaintiffs allege that the searches and seizures performed by the Defendant Officers at Plaintiffs' apartment and at Triple Ripple Hydroponics were unreasonable and unsupported by probable cause. "Probable cause exists when there is a fair probability

that contraband or evidence of a crime will be found in a particular place." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (internal citations omitted). A magistrate "need only find 'reasonable grounds for belief' that evidence will be found" in order to justify the issuance of a search warrant. *Id*. (citing *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990)).

"Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Leon*, 468 U.S. 898, 922 (1984). However, officers "cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Yancy v. Carroll Cnty.*, 876 F.2d 1238 (6th Cir. 1989). Additionally, an officer's affidavit for a search warrant "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).

Officer Therrien's affidavit for search warrant for Plaintiffs' apartment presented information obtained from Ms. Cornish and Mr. Muntian's drug-related criminal history. (Dkt. No. 29, Ex. 2.) Plaintiffs argue that Ms. Cornish was not reliable, and that Mr. Muntian's criminal history was "intentionally or recklessly overstated." (Dkt. No. 29 at 15-16.)

Plaintiffs' allegation that Officer Therrien failed to include Ms. Cornish's alleged bias against Plaintiffs in his affidavit has no bearing, as they have not alleged that Officer Therrien knew of any such bias. It is undisputed that Officer Therrien called Ms. Cornish after receiving her drug tip and confirmed that Ms. Cornish was the landlord of the apartment, that she had smelled marijuana coming from the property, and that her husband had also smelled marijuana coming from the property in the recent past. Although Mr. Muntian disputed Ms. Cornish's statements at his deposition, there is no dispute that Ms. Cornish made such statements to Officer Therrien. Whether or not Ms. Cornish's statements were accurate in light of Mr. Muntian's testimony is not determinative of this analysis, as facts which come to light after the issuance of a search warrant have no bearing on whether the warrant was supported by probable cause. An affidavit for search warrant must be truthful in the sense that it is appropriately believed or accepted by the affiant, but need not be ultimately correct to support probable cause. *See Franks v. Delaware*, 438 U.S. 154, 164-65 (1978).

The contention that Officer Therrien "intentionally or recklessly" overstated Mr. Muntian's criminal history is itself an intentional or reckless overstatement. Officer Therrien's affidavit states that Mr. Muntian pled guilty to three separate drug charges in Michigan, and that Mr. Muntian was "charged" in a fourth incident in Indiana. Mr. Muntian now states that he was never charged in Indiana. However, Mr. Muntian acknowledged in his deposition that he was a passenger in an automobile in Indiana when

8

the driver was arrested for drug possession.  (Muntian Dep. at 66.)  Accepting that Mr. Muntian was never charged in Indiana, there is still no indication that any mistake by Officer Therrien was in bad faith.  More importantly, Mr. Muntian does not dispute the accuracy of the three Michigan convictions included in the affidavit.  Even granting all inferences in favor of Plaintiffs, the Court finds that Defendant Therrien's affidavit provided adequate support for the Magistrate's finding of probable cause, and that Officer Therrien relied on that warrant in good faith.

Plaintiffs' attack on the search of the Triple Ripple Hydroponics store is also without merit.  On the strength of Mr. Muntian's deposition testimony, Plaintiffs argue that Officer Therrien's affidavit in support of the warrant inaccurately states that Mr. Muntian smokes marijuana, that Mr. Muntian did not have a caregiver card, and that Mr. Muntian claimed that his caregiver paperwork was at Triple Ripple Hydroponics.  However, a close reading of Mr. Muntian's deposition testimony reveals that Officer Therrien's statements were not false: Mr. Muntian admitted that he has smoked marijuana before, and the affidavit included Mr. Muntian's assertion that he had not been smoking that day; Mr. Muntian admitted that he did not have the actual caregiver card which an officer would expect to see, and the affidavit included Mr. Muntian's explanation that the state was simply behind in issuing the cards; Mr. Muntian did state that he had paperwork at the Triple Ripple Hydroponics, even though the parties dispute whether he had the same paperwork at his apartment.  (Dkt. No. 29, Ex. 1.)  Even accepting all factual

9

allegations presented in Mr. Muntian's deposition testimony, there is no basis for concluding that Officer Therrien's affidavit in support of the search warrant for the Triple Ripple Hydroponics store was produced in bad faith.

Furthermore, even excluding the contested statements in the affidavit, there was ample additional information to support the warrant. Marijuana had been discovered at Plaintiffs' apartment, Mr. Muntian admitted that he had around twenty marijuana plants at the Triple Ripple Hydroponics location, and, despite his assertion that he was a medical marijuana caregiver, Officer Therrien was unable to confirm Mr. Muntian's caregiver status in the LEIN system. These facts adequately supported the Magistrate's finding of probable cause. Accordingly, Defendants' motion for summary judgment will be granted on Plaintiffs' § 1983 claims for unlawful search and seizure.

**B.  Unlawful Arrest and Failure to Train**

A claim for unlawful arrest under § 1983 requires proof that the defendant officers lacked probable cause to arrest. *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999). A police officer has probable cause to arrest if there is a fair probability the individual to be arrested has either committed or intends to commit a crime. *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001). To succeed, Plaintiffs must show that the Defendant Officers' conduct fell below an objective standard of reasonableness. *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999).

Plaintiffs argue that the question of whether Defendants had probable cause to

arrest turns on the Michigan Medical Marihuana Act, Mich. Comp. Laws 333.26421, *et seq.* ("MMMA"). Plaintiffs allege that Mr. Muntian was a registered caregiver in full compliance with the MMMA,[2] and was therefore entitled to immunity from arrest and prosecution under section 4 of the act. (Dkt. No. 29 at 18-19); *See* Mich. Comp. Laws § 333.26424.

However, Plaintiffs' analysis completely ignores the standard for qualified immunity. Defendants are entitled to qualified immunity from civil suits under § 1983 unless Plaintiffs can show that it would have been clear to a reasonable officer that the arrest was unlawful. If a reasonable officer could have mistakenly concluded that there was probable cause, Plaintiffs' claim must fail. Given the highly unsettled nature of the MMMA and the present facts as alleged by Plaintiff, the Court finds that a reasonable officer could have concluded that there was probable cause for arrest.

First, marijuana remains an illegal substance with no accepted medical use under both the federal Controlled Substances Act and Michigan's Public Health Code. *People v. Redden*, 290 Mich. App. 65, 91-92 (O'Connell, J., concurring); 21 U.S.C. 812(c)(10); Mich. Comp. Laws § 333.7212(1)(c). The MMMA thus contradicts both the Michigan Public Health Code and federal law, creating substantial ambiguity for law enforcement. This is exacerbated by perceived abuses of the law's limited purpose and by a lack of

---

[2] Whether or not Mr. Muntian was in fact in full compliance with the MMMA is disputed, particularly with respect to his caregiver status and the number of plants he kept at the Triple Threat Hydroponics store. However, for the purposes of this analysis, the Court assumes that Mr. Muntian was in compliance with the act.

<205>Case 1:11-cv-00515-JGS   ECF No. 39 filed 06/21/12   PageID.348   Page 12 of 16</205>

clarity in the MMMA itself:

> [T]he MMMA is inartfully drafted and, unfortunately, has created much confusion regarding the circumstances under which an individual may use marijuana without fear of prosecution. Some sections of the MMMA are in conflict with others, and many provisions in the MMMA are in conflict with other statutes, especially the Public Health Code. Further, individuals who do not have a serious medical condition are attempting to use the MMMA to flout the clear prohibitions of the Public Health Code and engage in recreational use of marijuana. Law enforcement officers, prosecutors, and trial court judges attempting to enforce both the MMMA and the Public Health Code are hampered by confusing and seemingly contradictory language, while healthy recreational marijuana users incorrectly view the MMMA as a de facto legalization of the drug, seemingly unconcerned that marijuana use remains illegal under both state and federal law.

*People v. Redden*, 290 Mich. App. at 93-94.

Second, even ignoring potential contradictions in law and focusing on the MMMA provision relied upon by Plaintiffs, § 4 only grants protection from arrest to a primary caregiver who "possesses a registry identification card." Mich. Comp. Laws § 333.26424(b). Mr. Muntian admitted in his deposition testimony that he did not have such a card. Although the application paperwork which Mr. Muntian claims he possessed at his apartment may serve as a legal substitute for an identification card, it is not clear from § 4 that a person with no card is entitled to immunity from arrest. Furthermore, it is easy to imagine that a reasonable officer might conclude that a person without a card in Mr. Muntian's circumstances was subject to arrest, especially given that Mr. Muntian's status as a caregiver could not be confirmed on the LEIN system.

While it is unclear what protections were available to Plaintiffs under the MMMA, it is clear that a reasonable officer could have concluded that there was probable cause to

<205>12</205>

arrest Plaintiffs under the alleged circumstances. Accordingly, Defendants are entitled to summary judgment on the basis of qualified immunity as to Plaintiffs' § 1983 claims for unlawful arrest.

For similar reasons, Plaintiffs' § 1983 *Monell* theory claim against Defendant City of Three Rivers must also fail. Plaintiffs allege that Defendant City of Three Rivers failed to train police officers with respect to the MMMA. Even accepting this allegation as true, the claim fails because the effect of the MMMA is not clearly established. *People v. Redden*, 290 Mich. App. at 95. ([M]any provisions of this act are subject to multiple interpretations and that obfuscating words and phrases . . . The prosecuting attorney noted that he was unable to advise municipalities, townships, the police, and others regarding whether particular conduct was permitted or prohibited under the act."). In light of the ambiguity, a *Monell* claim for failure to train cannot succeed. *Revis v. Meldrum*, 489 F.3d 273, 288 (6th Cir. 2007) ("Given the lack of 'clearly established' rights in this area of the law . . . a jury could not reasonably find that the County's failure to appraise Eaton of the proper interpretation of the newly minted Rule 69 procedures amounted to deliberate indifference.").

## C. Malicious Prosecution

Plaintiffs bring an additional § 1983 claim for malicious prosecution. However, to succeed on a § 1983 claim of "malicious prosecution" under the fourth amendment, Plaintiffs must have suffered a deprivation of liberty consistent with the concept of

13

seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3rd Cir. 2007); *See Gregory v. City of Louisville*, 444 F.3d 725, 748-50 (6th Cir. 2006) (discussing the scope of fourth amendment protection extending beyond initial seizure, including "continued detention without probable cause").  Here, there was probable cause for the initial arrest, *supra* Part B, and Plaintiffs were not subsequently detained. Accordingly, Plaintiffs have not sufficiently alleged a § 1983 claim for malicious prosecution.

**D.  Excessive Force**

Finally, Plaintiffs allege that the Defendants used excessive force in detaining them at the 109½ S. Andrews Street property.  When analyzing a § 1983 claim of excessive force, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).  The court should "pay particular attention to the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)

Plaintiffs allege that when Mr. Muntian opened his door to the police, the Defendant Officers came into Plaintiffs' apartment with guns drawn.  Officer Therrien allegedly pointed his gun at April Armstrong and her daughter, and roughly stepped on Mr. Muntian's neck and back while he was lying passively on the floor.  Plaintiffs also

14

allege that Officer Therrien threatened to shoot Ms. Armstrong as she attempted to shield her daughter from potential harm.

Defendants do not contradict this factual narrative, arguing instead that the force used was justified by the nature of the suspected crime at issue. Defendants rely on *Michigan v. Summers*, 4542 U.S. 692, 705 (1981), for the proposition that police may "exercise unquestioned command of the situation" during a premises search for narcotics. The Court agrees that *Summers* and its progeny justify the decision to handcuff and detain Plaintiffs during the search. However, Plaintiffs' excessive force claim is supported by additional allegations; specifically, that the Defendants drew weapons, threatened Ms. Armstrong with deadly force, and unnecessarily stomped on Mr. Muntian's neck and back while he lay prone. These allegations go beyond mere detention and are outside the scope of the holding in *Summers*.

Although the Sixth Circuit has "occasionally permitted" the display of firearms in executing a search warrant, it has done so only "where the officers making the seizures acted out of a justifiable fear of personal safety." *Ingram v. City of Columbus*, 185 F.3d 579, 591-92 (6th Cir. 1999). In the present case, Defendants have not articulated any basis for a justifiable fear of personal safety other than the suspected presence of marijuana at the apartment. Without more, this is an insufficient basis for granting qualified immunity on Plaintiffs' excessive force claim.

Taking the alleged facts in the light most favorable to Plaintiffs, there remain

genuine issues of material fact for trial.  Accordingly, Defendants' motion for summary judgment on Plaintiffs' § 1983 excessive force claim will be denied.

## IV.

For the reasons's stated above, Defendants' motion for summary judgment will be denied as to Plaintiffs' § 1983 claim for use of excessive force.  Defendants' motion for summary judgment will be granted with respect to Plaintiffs' remaining claims.  An order consistent with this opinion will be entered.


Dated:  <u>June 21, 2012</u>                                      /s/ Robert Holmes Bell                      
                                                                 ROBERT HOLMES BELL
                                                                 UNITED STATES DISTRICT JUDGE